**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LYNETTE EDWARDS, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-14-CV-588-XR |
| | § | |
| AMERICAN HEALTHWAYS SERVICES, | § | |
| L.L.C., | § | |
| | § | |
| *Defendant*. | § | |

**ORDER**

On this day the Court considered Defendant's motion for summary judgment.  Docket no. 39.  After careful consideration of the motion, response, reply and competent summary judgment evidence, the motion is granted.

**I.      Background**

Plaintiff was hired by Defendant on January 3, 2011, at age 52 to work as a telephone nurse at its Well-Being Improvement Center in San Antonio.  Plaintiff was primarily responsible for making calls to new patients and introducing them to the various wellness programs available to them (engagement calls).  At times Plaintiff also made clinical calls dispensing nursing advice (clinical calls).

From date of hire through March 3, 2013, Plaintiff's direct supervisor was Deborah Bodin.  Plaintiff makes no complaints about her employment during this time frame.  During this time, Plaintiff requested and received leave pursuant to the Family and Medical Leave Act for a gastric bypass procedure with no problems noted.  After Ms. Bodin's employment terminated

1

Debbie Decker (also sometimes referenced by the parties as Debbie Felan) became the Plaintiff's immediate supervisor.

From March 11 through May 10, 2013, Plaintiff again requested and was granted FMLA leave for what she characterized as a mental breakdown or bi-polar episode. The loss of her immediate supervisor is noted by the Plaintiff as the triggering event for her need to take a leave of absence.[1] It is undisputed that Plaintiff returned to her former position after her return from this FMLA leave.[2]

On May 20, 2013, Judy Williams (age 54) became the Plaintiff's supervisor. Ms. Williams met with the Plaintiff to discuss two engagement calls she had made upon her return to work.[3] All engagement calls made by telephone nurses are monitored by supervisors for efficiency goals and quality control. Plaintiff was verbally admonished for dispensing clinical advice during an engagement call. Plaintiff was not licensed to practice nursing in the state where the patient resided and her rendering of advice during the engagement call violated company policies.[4] Plaintiff disagrees with the characterization of the telephone call and questions whether this was merely a verbal (rather than written) counselling. As explained below, these disagreements do not create any material fact issue on the ultimate question of pretext.

Within days of receiving the admonishment, Plaintiff met with Cassius Bradley (age 50), who was the company's human resources representative. Plaintiff alleges that she told Mr. Bradley that the company was terminating nurses that were older and had previously taken

---

[1] Plaintiff's deposition at p. 38.
[2] Plaintiff's deposition at p. 37.
[3] It was discovered during the Plaintiff's deposition that this conversation and others had been secretly audiotaped by the Plaintiff. Apparently the Plaintiff failed to disclose the existence of the audiotapes to her own attorney until it was revealed during her deposition. Plaintiff's deposition at p. 171.
[4] Cassius Bradley deposition at p. 24.

FMLA leave.  Mr. Bradley denies that Plaintiff expressed these concerns.  Plaintiff admits that she secretly audiotaped this conversation with Mr. Bradley, but for some unexplained reason this recording no longer exists.  All other recordings have presumably now been produced.  As stated below, the Court assumes for summary judgment purposes that the Plaintiff made these remarks to Mr. Bradley.

On July 18, 2013, Ms. Williams again met with the Plaintiff to discuss certain calls. During this meeting the Plaintiff accused Ms. Williams of harassing her, creating a hostile work environment, and retaliating against her.   When Ms. Williams asked her to explain the allegations, Plaintiff refused.

On this same day, about 45 minutes after the meeting ended, Ms. Williams saw that the Plaintiff had not yet put on her headset and resumed making calls.  Ms. Williams told Plaintiff to resume making calls; Plaintiff refused to do so, and continued working on her computer.  Ms. Williams then requested that IT personnel access the Plaintiff's computer to see what Plaintiff was doing.  The IT personnel saw that the Plaintiff was accessing company and patient data (including patient protected health information) and forwarding that data to her private email address.

Upon learning of this development, Ms. Williams notified Kellie Lewis (age 51)(second level supervisor).  Ms. Lewis instructed Ms. Williams to have the Plaintiff's computer shut down and suspend the Plaintiff until an investigation could be completed.

Plaintiff initially denied that she had forwarded any confidential business and patient information to her email address.[5]  She has subsequently admitted this fact during discovery and no fact issue exists.

On July 22, 2013, the Vice-President for Human Resources approved Ms. Lewis's recommendation that the Plaintiff be discharged for the forwarding of confidential business and patient information to her private e-mail address.  On July 23, Mr. Bradley and Ms. Williams called the Plaintiff to inform her of the termination decision, but Plaintiff refused to speak to them without her attorney present.  A termination letter was then sent to Plaintiff.  That same day she filed a charge of discrimination with the Equal Employment Opportunity Commission.

## II.      Pending Claims in this lawsuit

A number of claims previously asserted by the Plaintiff have been dismissed by the Court.  See docket no. 18.  The following claims remain and are addressed below:  (1) age discrimination in violation of the Texas Commission on Human Rights Act (TCHRA), Texas Labor Code Chapter 21; (2) disability discrimination (bi-polar) in violation of Texas Labor Code Chapter 21; (3) retaliation in violation of Texas Labor Code Chapter 21; (4) claims of age and disability discrimination under a disparate impact theory, and (5) retaliation for taking FMLA leave in violation of the Family and Medical Leave Act.

## III.     Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508

---

[5] See Exhibit K to Plaintiff's Response to Defendant's motion for summary judgment (denying she copied and forwarded proprietary information and stating the data copied and forwarded "doesn't have PHI (personal health information").

(5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id*. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*. "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a

showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### IV.   Age Discrimination Claim

To establish a prima facie age discrimination claim, a plaintiff must show that she: (1) suffered an adverse employment action[6]; (2) was qualified for the position; (3) was within the protected class when the adverse action occurred; and, (4) was replaced by someone younger or treated less favorably than a similarly situated younger employee, or otherwise discharged because of her age. *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003) (*citing Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)).

As stated above, there is no fact issue regarding the fact that Plaintiff forwarded company and patient data to her personal email account. Plaintiff essentially argues, however, her actions were no big deal. Plaintiff argues that supervisors were much more concerned with worker productivity and employee use of the internet than they were with patient's protected health information being revealed. In addition, Plaintiff identifies various other employees who believe

---

[6] The parties argue at length regarding what constitutes an adverse action. Defendant contends only Plaintiff's termination suffices. Plaintiff argues that she "had job responsibilities removed from her including her opening and closing duties, Mrs. Edwards's desk was promptly moved and she was relocated to the front of the facility so she could be monitored." For purposes of the Court's analysis all this is unneeded because for all of Plaintiff's claims, even assuming the other elements of her discrimination and retaliation claims were met, she fails to establish that the company's articulated reason for her discharge (the forwarding of company and patient information to her private email address) is pretextual. Plaintiff further fails to create a material fact issue regarding whether younger or non-disabled employees were not discharged when committing the same infraction. Otherwise, Plaintiff fails to provide any competent summary judgment evidence as to how these opening and closing duties were material (other employees performed these tasks as well), how any removal of these duties affected her pay or other condition of employment, and when this "removal" of duties took place. Likewise, Plaintiff fails to provide any competent summary judgment evidence when she was moved to another desk so that her performance could be watched more closely, and how this move allegedly affected the terms and conditions of her employment. Plaintiff vaguely states that she was the "go to" person at work and this was taken away from her. This claim fails from the same defects noted above.

that they too were victims of age discrimination by the company.[7]  Finally, Plaintiff provides a listing of other individuals who have both resigned and were discharged by the company and their ages.[8]  None of Plaintiff's arguments create a material fact issue.

Plaintiff fails to identify any younger employee who committed the same infraction and was not discharged.  *See Swenson v. Schwan's Consumer Brands North America, Inc*., 500 F. App'x 343, *3 (5th Cir. 2012)(plaintiff must show that the employer gave preferential treatment to another employee under "nearly identical" circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees).

Plaintiff's disagreement with how security conscious company officials were with patient's protected health information[9] (e.g. Plaintiff's insinuation that patient information was left on employee's desks) does not suffice to defeat summary judgment.  The company concluded that Plaintiff's forwarding to her personal Yahoo email account of company and patient information (which contained protected health information) was a serious offense, and Plaintiff fails to establish that any younger employee (or any employee for that matter) committed the same offense and was not discharged.  Summary judgment is granted to Defendant on Plaintiff's age discrimination claim.  *See Jackson v. Watkins*, 619 F.3d 463, 468 (5th Cir. 2010) ("But it is not our place to second-guess the business decision of an employer, as long as those decisions are not the result of discrimination."); *Mayberry v. Vought Aircraft Co*.,

---

[7] Deposition of Sally Broster at p. 70 (all nurses were treated badly; age and disability discrimination claims were based on "just a general feeling among the staff").

[8] The chart fails to provide any reason for the discharge of other employees and no competent summary judgment evidence elaborates this chart.

[9] The company did have stickers affixed to computers reminding employees to keep patient data confidential.  The company also provided periodic training on compliance with the privacy requirements of the Health Insurance Portability and Accountability Act of 1996 (HIPAA).  Cassius Bradley deposition at p. 38.  Even individuals identified by Plaintiff considered Plaintiff's actions problematic under HIPAA.  Deposition of Sharon Kimbrough at p. 39.

55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer makes an erroneous decision; it is whether the decision was made with discriminatory motive.").

### V.        Disability Discrimination Claim

To establish a prima facie case of disability discrimination, the plaintiff must show: (1) she has a disability; (2) she is qualified for the job; and (3) she suffered an adverse employment decision because of her disability.  *Texas Department of State Health Services v. Rockwood*, --- S.W.3d ----, 2015 WL 3398386, *6  (Tex. App.-San Antonio 2015, no pet. h.).

For the same reasons that summary judgment is proper as to Plaintiff's age discrimination claim, summary judgment is proper as to Plaintiff's disability discrimination claim.  Plaintiff provides no competent summary judgment evidence that she was discharged because of her disability.  Assuming that all the key players associated with the decision to discharge the Plaintiff (including Mr. Bradley) knew of her bi-polar condition, Plaintiff was discharged for a legitimate, non-discriminatory reason. Plaintiff fails to establish that any non-disabled employee was not discharged for violating the same offense.  Plaintiff's and others' subjective belief of discrimination are insufficient to create a material fact issue.  Speculation and an employee's personal belief are insufficient to create a fact issue as to pretext.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) ("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason.").

### VI.       Retaliation Claim

To establish a violation, the employee must show that: (1) she engaged in an activity protected by TCHRA; (2) an adverse employment action occurred; and (3) there exists a causal

link between the protected activity and the adverse action.  *Esparza v. University of Texas at El Paso*, --- S.W.3d ----, 2015 WL 4711612 at *8 (Tex. App. - El Paso 2015, no pet. h.).  Even assuming that Plaintiff engaged in a protected activity by making a complaint to Mr. Bradley, Plaintiff fails to establish a causal link between the protected activity and her discharge.  As stated above, Plaintiff was discharged for a legitimate, non-discriminatory, non-retaliatory reason.  Plaintiff's subjective belief that she has been retaliated against fails to defeat summary judgment.

### VII.        Disparate Impact Theories

"Disparate treatment … is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment.  (Citation omitted). Undoubtedly disparate treatment was the most obvious evil Congress had in mind when it enacted Title VII. See, e. g., 110 Cong. Rec. 13088 (1964) (remarks of Sen. Humphrey) ('What the bill does . . . is simply to make it an illegal practice to use race as a factor in denying employment. It provides that men and women shall be employed on the basis of their qualifications, not as Catholic citizens, not as Protestant citizens, not as Jewish citizens, not as colored citizens, but as citizens of the United States').  Claims of disparate treatment may be distinguished from claims that stress 'disparate impact.' The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity."  *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335-36 n. 15 (1977).

Plaintiff incorrectly attempts to reframe her disparate treatment claims into disparate impact claims arguing that the company's alleged favorable treatment of younger, non-disabled employees is a policy with a disparate impact.  Plaintiff's disparate impact claims fail as a matter of law because Plaintiff fails to identify any *specific* employment policy or practice that allegedly falls more harshly on older or disabled employees.  Plaintiff's disparate impact claims are just a rephrasing of her disparate treatment claims.   In the alternative, Plaintiff failed to assert any disparate impact claims in her charge of discrimination filed with the EEOC.  Accordingly, she failed to exhaust her administrative remedies regarding any such claims.  *See Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012); *Taylor v. Books A Million*, 296 F.3d 376, 378–79 (5th Cir. 2002), *cert. denied*, 537 U.S. 1200 (2003).

VIII.    **FMLA Retaliation**

To establish a prima facie case of retaliation a plaintiff must establish:  (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) she was treated less favorably than an employee that had not requested FMLA leave; or (3b) the adverse decision was made because she took FMLA leave.  *Harrelson v. Lufkin Industries, Inc*., --- F. App'x ----, 2015 WL 3941905 at *2 (5th Cir. 2015).

Once a plaintiff has established a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the plaintiff's termination. *Id*.  If the employer can articulate such a reason, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason was pretextual. *Id*.

Plaintiff has failed to present any competent summary judgment evidence to demonstrate that she was treated less favorably than an employee that had not requested FMLA leave.  In addition, for the reasons stated above, Plaintiff fails to establish that she was discharged because

she took FMLA leave.  Plaintiff only presents her subjective belief that she was discharged because of her previous FMLA leaves.  The mere temporal proximity between the FMLA leaves and her discharge is insufficient to defeat summary judgment.  *See Baumeister v. AIG Global Inv. Corp.*, 420 F. App'x 351 (5th Cir. 2011).

## Conclusion

Plaintiff was discharged for a legitimate, non-discriminatory, non-retaliatory reason. Plaintiff fails to establish all the requisite elements of her age, disability and retaliation claims. Accordingly summary judgment is granted in favor of the Defendant on all claims.  Defendant is awarded its costs of court and may file a Bill of Costs within the time allotted by the Local Rules.  The Clerk is directed to enter a Judgment that Plaintiff take nothing on all her claims and close this case.

SIGNED this 8th day of September, 2015.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE